# Lehigh Valley Railroad Co. *versus* McKeen.

1. Sparks were thrown from an engine of a railroad company, to a point on land adjoining the plaintiff's, about three hundred feet from a lumber pile, belonging to the plaintiff. The sparks set fire to combustible materials, consisting of leaves, briars, brush, stumps and logs, burning the same in its pathway, until it reached the plaintiff's lumber. The weather was dry and a high wind was blowing in the direction of the property destroyed. The fire reached the lumber about two hours after it started, and could not be extinguished by any effort. In a suit for the loss, there was evidence on the part of defendant company tending to another theory as to the origin and extent of the fire. *Held*, that it was properly left to the jury to determine whether the negligence of defendant was the proximate or remote cause of the injury. Pennsylvania Railroad Co. *v.* Hope, 30 P. F. Smith 373, followed.

2. There was evidence on the part of plaintiff, that the sparks emitted from the engine on the day of the fire were of unusual size. The defendant gave evidence to show, that the engine was supplied with the most approved spark-arrester, and asked the court to charge that there was no proof of any want of care in the working of the engine, which the court refused. *Held*, that the question of negligence was one of fact and properly left to the jury.

April 2d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Northampton county :* Of July Term 1878, No. 83.

Case by Thomas L. McKeen against the Lehigh Valley Railroad Company, for setting on fire and destroying plaintiff's lumber, which plaintiff alleged was caused by the negligence of defendant.

On the 4th of May 1870, the lumber in question was piled between the track of the Lehigh and Susquehanna Railroad and defendant's road, at a point about one mile above White Haven, Luzerne county. The strip of land between said tracks, containing about three acres, on a portion of which this lumber was piled, belonged to the plaintiff. About one o'clock, or thereabouts, on the afternoon of the above-mentioned day, the lumber caught fire from some cause or other, and was totally destroyed. The allegation of the plaintiff was that between 12 and 1 o'clock P. M., a coal train drawn by engine No. 133, going northward on defendant's road, passed the place where the lumber was piled; that the engine threw sparks of fire, which set fire to the brush, leaves, rubbish, and other combustible mate-

[Lehigh Valley Railroad Co. *v.* McKeen.]

rials on both sides of the track; that the fire was transmitted to brush, leaves, briars, stumps, logs, and other combustible materials on plaintiff's land and from thence to his lumber; that every effort was made to extinguish the fire before it reached the lumber, but that they proved ineffectual owing to the high wind.

Several witnesses testified that they had observed the character of the sparks thrown out by the engine in question both on the day of the fire and for sometime before; that the sparks were of unusual size, and that at different times they had set fire to boards, straw, a house and other combustible materials. Witnesses testified for the defendant that the engine did not throw out sparks of the character described; that on the day of the fire the engine had a spark-arrester of the most improved kind, and that it was in good condition; that trains of the Lehigh and Susquehanna Railroad passed on that road near to the plaintiff's lumber; that on the day of the fire and for several days previous, there was fire in the stumps, brush and other combustible material in the immediate vicinity of the lumber pile, from some of which fires the lumber might have caught, especially as there was a strong wind blowing at the time and in the direction of the lumber pile.

The defendant, inter alia, submitted the following points, to which are appended the answers of the court:

4. There being no proof of any want of care on the part of the defendant in the character of the spark-arrester used on the locomotive which is alleged to have caused the fire that destroyed the plaintiff's lumber, or that there was any want of care and vigilance in running the train, there can be no recovery in this action.

Ans. "This point we cannot affirm. To do so we would have to take the case from the jury and direct a verdict in favor of the defendant. The concluding clause in the point is substantially correct, as there is little, if any, evidence that there was any want of care and vigilance in running the train at the time of the fire, but we cannot say, as alleged in the remaining part of the point, that there is no proof of any want of care on the part of the defendant in the character of the spark-arrester used in the locomotive which is alleged to have caused the fire that destroyed the plaintiff's lumber, or that it was in a defective condition at the time of the fire. The proof submitted by the plaintiff bearing on the said questions of fact is of such a character as to entitle it to be considered by the jury, whose province it is to determine said questions of fact from all the evidence in the case." (Second assignment of error.)

8. It is the undisputed fact that the plaintiff's lumber was not fired by sparks from defendant's locomotive coming in direct contact with it; it is also the undisputed fact that the fire originated on the land of another, from which it was transmitted to combustible material on the land of the plaintiff, from which latter material

it was communicated to plaintiff's lumber under the influence of an unusually high wind; in these circumstances the maxim *causa proxima non remota pectatur* becomes applicable, and the plaintiff cannot recover.

Ans. "If the jury find that some combustible material, though on the lands of another, were in the first instance set on fire by sparks or burning coal from defendant's locomotive, and the fire was transmitted to other combustible materials on lands of the plaintiff and by means of the latter materials to the plaintiff's lumber, in such case the jury must determine whether such facts constitute a continuous succession of events so linked together as to be a natural whole or whether the chain is so broken as to become independent, and the final result, to wit, the burning of plaintiff's lumber cannot be said to be the natural and probable conseqenuce of the setting on fire the combustible materials in the first instance by the sparks or burning coal from defendant's locomotive. The rule for determining what is proximate cause is, that the injury must be the natural and probable consequence of the act in the first instance, and that it might and ought to have been foreseen under the circumstances." (Fifth assignment.)

10. Under all the testimony in the case there is not sufficient evidence to prove that the engine of the defendant occasioned the fire which destroyed the plaintiff's lumber, and that it was by reason of any negligence on the part of the defendant, and, therefore, the verdict must be for the defendant.

Ans. "Refused." (Seventh assignment.)

8. The court erred in answering as they did the defendant's eleventh point, which was as follows:

11. Under all the evidence in the cause the verdict must be for the defendant.

Ans. "Refused." (Eighth assignment.)

In the general charge, the court, Meyers, P. J., inter alia, said: "The allegation of the plaintiff is that the sparks of fire thrown from the engine set fire to the combustible materials alongside of the defendant's road on land adjoining the plaintiff's strip of land on which the lumber was piled; that the fire was then transmitted to combustible materials, such as leaves, briars, brush, stumps and logs on said strip of land and by the force of a high wind to his lumber. The defendant contends that under such circumstances and conditions the throwing of sparks of fire by the engine was not the immediate or proximate cause of the injury to the plaintiff's lumber. This is a question of fact for you." (Ninth assignment.)

Verdict for plaintiff for $9609.20. After judgment, defendant took this writ, among its assignments of error being those above noted.

*H. Green,* for plaintiff in error.—A former suit, which was

brought for this same injury by the same plaintiff against the defendant, had been abandoned in consequence of the ruling of this court in the case of Railroad Co. *v.* Kerr, 12 P. F. Smith 353. That case was decided in 1869 and reported in 1870. Subsequently the case of Railroad Co. *v.* Hope, 30 P. F. Smith 373, was decided in 1876, and when it was made public and just before the Statute of Limitations would have become a bar, the present suit was brought with the expectation of getting the case to the jury under the doctrine supposed to be held in that case, that the jury and not the court must decide whether the cause of the injury was remote or proximate. At the time of the trial of the present case in April 1878, the case of Hoag *v.* The Lake Shore and Michigan Southern Railroad Co., 4 Norris 293, was not reported, and was not known to the court below, and consequently the disposition of the main question at issue was made conformable to what was the apparent, and the supposed, doctrine of the case of Railroad Co. *v.* Hope; that is, the question of remoteness or proximity was referred as a question of fact to the jury.

Nevertheless it was contended for the defendant that where the facts were undisputed it was the duty of the court to pass upon them and determine the question without referring it to the jury ; and the ground was taken that in this case the facts were undisputed upon which the plaintiff claimed to recover, so far as this question was concerned, and that they constituted a clear case of remote cause, and, therefore, there could be no recovery.

The undisputed facts of the present case bring it fully within the principles of Railroad Co. *v.* Kerr, *supra*, and Hoag *v.* Railroad Co., *supra*. The fire did not directly communicate to anything on the land of the plaintiff. Some worthless material on the land of another was first ignited. It was then blown to other dry material on plaintiff's land, and was thus communicated to the lumber pile.

It so happens that, in the case at bar, each element which controlled the question of remoteness in the two cases cited, existed. Thus, the proximate cause of the fire which destroyed the plaintiff's lumber was not the sparks which were emitted from defendant's engine, but sparks which were produced by logs, stumps and brushes burning on the plaintiff's land, where the fire did not originate, and which were carried by the air over a cleared space of eighteen or twenty feet in width to the plaintiff's lumber. In other words, there were two intervening agencies between the sparks and the lumber. In fact there were three : 1. The fire was not communicated by our engine to any property of the plaintiff. It commenced on the land of another and burned substances on those premises. 2. The fire thus created was carried by the force of an extraordinarily high wind over on the plaintiff's land, and there set fire to other material on his land. 3. This latter material being in combustion, the sparks were carried by the same high wind over a

[Lehigh Valley Railroad Co. *v.* McKeen.]

cleared space of ground, and deposited on the plaintiff's lumber. So that the actual cause of the fire that destroyed the lumber was three degrees removed, as to the material, intervening substance, and one degree removed as to the means by which the fire was carried before it reached the lumber.

If the defendant used ordinary skill in procuring a good and safe spark-catcher, such as are most in use and approved by experienced railroad operators and mechanics, it is not responsible for damage resulting from the emission of sparks : Frankford and Bristol Turnpike Co. *v.* Philadelphia and Trenton Railroad Co., 4 P. F. Smith 345 ; Philadelphia and Reading Railroad Co. *v.* Yerger, 23 Id. 121.    The operation of this rule cannot be avoided by vague testimony as to the emission of sparks by an engine.    The proof must be direct as to the existence of some defect in the apparatus used to check the emission of sparks.

*Edward J. Fox* and *John L. Wilson*, for defendant in error.— Were the jury, under the evidence, warranted in finding that coals from this engine were the approximate cause of the fire ?    Or would the court have been warranted in saying that the facts sworn to by them demonstrated that coals from this engine were not the proximate cause of the fire ?    The case of Hoag *v.* Railroad Co., *supra*, recognises the principle as a correct one, that where the probable consequences of a negligent act would be the destruction of another's property, the party guilty of the negligence is responsible.    In that case there was plainly no negligence on the part of the railroad company.    No amount of foresight or precaution in running a train would have enabled an engineer to foresee that a landslide which occurred only ten minutes before would throw the train off, and that the disastrous consequences would result which did follow.    It was a case of an accident not caused by the railroad company's negligence, and they were very properly absolved from liability.

The company contended that the injury was too remote from the original cause, but this court agreed with the court below that the " question of proximity was one of fact peculiarly for the jury."    In the opinion the principles laid down are not in conflict with the principles asserted in Railroad Co. *v.* Kerr, or in Hoag *v.* Railroad Co., but are in harmony with these cases, with the well-considered statements of the treatises from which we have quoted and with the well-settled doctrine of leading cases in other states.    Six of the judges were on the bench when the Hope case and the Hoag case were decided, and five of those who decided the Hope case concurred in the decision of the Hoag case.    There was do dissent in either case.    And yet the plaintiff in error treats the Hope case and its principles as being overruled.    We see no warrant for such an assumption. The two cases differed widely in their facts and in their merits,

and as the court remarked in the opinion in the Hope case, "Every case must depend upon its own circumstances."

The plaintiff in error complains that the court admitted testimony to show that the engine could not have had proper appliances to prevent the scattering of coals of fire, and that, the testimony offered was entirely insufficient to overcome that offered by the company that the engine had the most approved pattern of spark-arrester and that it was in perfect order. Surely this was a question of fact for the jury.

Mr. Justice TRUNKEY delivered the opinion of the court, May 5th 1879.

However severe animadversions, sometimes made upon juries, the courts are bound to conserve their rights in the trial of causes. The organic law secures to the people trial by jury, as it was at common law, and nothing is more offensive in the administration of justice than for the judge to usurp the disposition of facts. Where there is no evidence of a disputed fact, or a mere scintilla, the question shall not be submitted; but where there is sufficient evidence to warrant its finding, it must be, and its determination is exclusively for the jury. If a fact, in the opinion of the judge, be proved by clear and uncontradicted oral testimony, he may advise, not command, the jury to find it. They may disbelieve the witnesses, though he credits them, and they may understand the testimony differently from him. When a fact, essential to the maintenance of a cause, is not established by proof, the judge may order a nonsuit, or direct a verdict for defendant; and when the requisite facts are agreed upon, or admitted, he may instruct a finding for plaintiff. These trite principles, called to mind by the line of argument, seem to have been remembered by the learned judge, and they forbid reversal in absence of error in his rulings upon legal questions. If, indeed, it be true that a prejudice exists affecting jurors in a class of cases, elsewhere, it might be profitable to inquire into the causes and of the means for its removal.

The chief complaint in this cause is, "the question of remoteness or proximity was referred as a question of fact to the jury." How it could have been otherwise, without disregarding the authority of Pennsylvania Railroad Co. v. Hope, 30 P. F. Smith 373, is difficult to comprehend. There the fire was dropped on a cross-tie of the track, "and running into a small heap of dry grass that had been cut and pulled and thrown into a pile, in the fall before, was carried thence by means of rubbish and dry grass on the company's ground, across the roadway to the fence, which was fired, and thence across two grass fields, burning the dry grass in its pathway, until it reached the plaintiff's fence and woodland, about six hundred feet from the railroad, burning the fence and a large part of the woods. The weather was dry and windy, and the

[Lehigh Valley Railroad Co. *v.* McKeen.]

direction of the wind was strongly toward the plaintiff's fields and woods." Here, the sparks were thrown from the engine to a point alongside of the defendant's track, on land adjoining the plaintiff's, about three hundred feet from the lumber, set fire to combustible materials, consisting of leaves, briers, brush, stumps and logs, burning the same in its pathway till it reached the plaintiff's lumber. The weather was dry and a high wind was in the direction of the property destroyed. There, the sparks fell on the track and were communicated to the adjoining land by the dry grass, negligently left by the company on its roadway. Here, the sparks were thrown into the combustibles on the adjoining land. The fire, reaching the combustibles on the land, was as sure to destroy in one case as the other. It was held that the question of proximity was one of fact peculiarly for the jury. " How near or remote each fact is to its next succeeding fact in the concatenation of circumstances from the prime cause to the end of the succession of facts, which is immediately linked to the injury, necessarily must be determined by the jury. These facts or circumstances constitute the case, and depend upon the evidence. The jury must determine, therefore, whether the facts constitute a continuous succession of events, so linked together, that they become a natural whole, or whether the chain of events is so broken, that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause—the negligence of the defendant. The rule concerning involuntary negligence, as distinguished from wanton or intentional injury, is expressed in the maxim, *causa proxima non remota spectatur.* * * In all or nearly all cases, the rule for determining what is a proximate cause is, that the injury must be the natural and probable consequence of the negligence, and that this might and ought to have been foreseen under the surrounding circumstances. These are the circumstances of the particular case, and from the nature of the thing must be referred to the jury." Per AGNEW, C. J.

The portion of the charge, alleged erroneous in the ninth assignment, immediately preceded the reading of the matter set forth in the fifth assignment, and placed in its proper order in the instructions to the jury, accords with the doctrine in Hope's case, and is nearly in the words there used. To have affirmed defendant's eighth point would have annulled that decision. The facts were not agreed upon nor admitted, and their finding was exclusively for the jury. Had the defendant added to those stated in the point, another fact, namely, that the fire was transmitted by a continuous burning of the leaves and brush, from the point of its origin to the lumber, the natural and probable consequence of defendant's negligence, the jury might properly have been told that, upon such facts, the cause was proximate and plaintiffs could recover. Or, instead, had it been added that there was no continuous burning and the destruction

[Lehigh Valley Railroad Co. v. McKeen.]

of the lumber was not a natural result of setting fire to the leaves and brush, then upon such facts, it could well have been affirmed that the maxim applied and the verdict must be for defendant. A jury of the vicinage would understand the witnesses and know quite as well how that fire would run in the dry leaves and brush, on a windy day, as a judge learned in the law. Likely not one would hesitate in believing there was no real break in the fire, from its starting point to the lumber, or that if it got within eighteen or twenty feet of the lumber, the latter would burn. They could also determine whether dry weather and high winds, in the spring-time, are extraordinary; and whether, under these conditions, the continuous succession of events was such that the cause was naturally linked to the injury, and within the probable foresight of him whose negligence ran through from the beginning to the end.

It is contended that Hoag & Alger v. L. S. & M. S. Railroad Co., 4 Norris 293, in effect overrules the doctrine in Railroad Co. v. Hope, and fully sustains and approves the ruling in Pennsylvania Railroad Co. v. Kerr, 12 P. F. Smith 353. The opinion of the late chief justice, in Hope's case, shows the marked distinction between that and Kerr's, and that the latter, upon its own facts, was unshaken. If the case of Hoag & Alger seems to support the one rather than the other, it is because of the greater similarity of facts.

In Hoag & Alger v. The Railroad Co., the plaintiffs adduced the evidence upon which they framed their third point, praying instructions that if the jury believed the facts as therein stated, they were entitled to recover. The defendant conceded the facts, and the jury were told that upon the facts in evidence, or as assumed in the plaintiff's third point, their verdict should be for defendant. Had the facts not been virtually admitted the instruction would have been bald error; and so held this court. PAXSON, J., after referring to, and quoting at some length from Railroad Co. v. Hope, without a word of qualification or abatement of its force, says: " But it has never been held that when the facts of a case have been ascertained, the court may not apply the law to the facts. This is done daily upon special verdicts and reserved points. Thus in the Railroad Co. v. Kerr, 12 P. F. Smith 353, a case bearing a striking analogy to this, the court submitted the question of negligence to the jury, but reserved the question of proximate cause upon the undisputed facts of the case. Of course, this could not have been done if the facts were in dispute. A reserved point must be based upon facts admitted in the cause or found by the jury. In questions of negligence it has been repeatedly held that certain facts when established amount to negligence *per se*. * * * We may therefore regard the plaintiff's third point as a prayer for instructions upon the undisputed facts of the case." It thus appears that the authority of The Rail-

[Lehigh Valley Railroad Co. *v.* McKeen.]

road Co. *v.* Hope is in nowise shaken by the decision in a case where the plaintiffs complained that the facts were not submitted which they themselves assumed to be true.   Had the opposite party denied they were a full and fair statement and the case had come on his complaint, the situation would have been altogether different.   Or had the assumed facts been in dispute, and the point refused therefor, neither party could complain.

In that case the ignited oil ran down the bank into the river and was carried down the current, top of the water, till consumed.   On its way it set fire to the plaintiff's property.   The water bearing it was an intervening agent, as would be the hand bearing a lighted torch.   This court stated the rule for determining what is proximate cause, and said: " It would be unreasonable to hold that the engineer of the train could have anticipated the burning of the plaintiff's property as a consequence likely to flow from his negligence in not looking out and seeing the land-slide."   " It is manifest that the negligence was the remote and not the proximate cause of burning the plaintiff's building."   Not so, was it held where fire was negligently communicated to dry grass and fences, in which the fire spread as it consumed, and was speeded in its progress by a strong wind.   In the latter, the question of proximity was one of fact for the jury, who must determine whether the injury was the natural and probable consequence of the negligence, such a consequence as under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act.   What would be more quickly apprehended, by one setting fire to dry leaves and brush, than that it would run before the wind and consume property in its pathway ?

There is no error in the answer to the defendant's fourth point: besides in the general charge, on this matter, the court called attention to the testimony in a manner which ought to be entirely satisfactory.

An examination of the testimony has convinced us that the defendant's tenth and eleventh points were rightly refused.   The plaintiff's, if believed, standing alone, would justify a verdict in his favor, and, consequently, the court was bound to submit the questions of fact to the jury, no matter how strong the defendant's counter proofs.   It would be idle to refer to the testimony of each witness in detail.

The third, fourth, sixth and tenth assignments were not pressed, for the declared reason, that it is now settled that it is not contributory negligence in the owner to leave combustible material on his land near a railway track:  Philadelphia & Reading Railroad Co. *v.* Hendrickson, 30 P. F. Smith 182.

The numerous points were fairly answered, and the instructions so full that there is no complaint of omission to charge on any question which was raised at the trial.

Judgment affirmed.