## Advance Specialty Co., Inc., v. Visco

*Lippincott & Donaldson*, for plaintiff.
*Hodge, Hodge & Cramp*, for defendant.

TOAL, J., March 16, 1959.—The Advance Specialty Company, Inc., brought suit in trespass against defendants Joseph Visco, the Philadelphia Suburban Water Company and Borough of Lansdowne. The matter was tried before Toal, J., without a jury. At the conclusion of the testimony, the trial judge found in favor of defendants Joseph Visco and the Borough of Lansdowne, and in favor of plaintiff against the Philadelphia Suburban Water Company, and awarded a

verdict of $2,306 to plaintiff. The Philadelphia Suburban Water Company duly filed written exceptions to the finding of the trial judge.

The facts of the case are as follows: Plaintiff is engaged in the manufacture of finished and semi-finished metal products. In 1954 certain equipment was installed in its plant at 20 South Union Avenue, Lansdowne. This equipment required unusually large amounts of water to function properly. As a consequence, plaintiff contacted the Philadelphia Suburban Water Company and the latter recommended the installation of a four-inch service line. In accordance with plans submitted by the water company this line was installed by plaintiff from the curb stop to the building and by the water company from the water main in the bed of Union Avenue to the curb stop.

On July 8, 1957, defendant, Joseph Visco, was engaged in the installation of a sewer line in Union Avenue under contract with the Borough of Lansdowne. In the course of this work the lateral line extending from the water main in the bed of Union Avenue to plaintiff's building was accidentally severed by the clam of a digger being used by employes of Joseph Visco. Visco had previously requested the water company to indicate with lines on the surface of the street the location of any pipes that would be in Visco's way as the digging proceeded. The water company had marked a spot with yellow lines several feet away from the location of the pipe servicing plaintiff's plant.

As a consequence of this break in its service line, plaintiff's water supply was cut off for almost an entire day, as a result of which plaintiff had to cease its operations. This cessation of operations resulted in a loss to plaintiff of $2,306 from wages, materials already in process and lost by the shutdown, and lost profits. There was testimony offered on behalf of plaintiff and also on behalf of the other defendants from which the

court, sitting as the trier of fact as well as law, could fairly conclude that the break in the service line was the proximate result of the water company's failure to properly mark the location of the service line for the sewer contractor, Joseph Visco.

Defendant water company admits in its brief that the break in its service line was the proximate result of the water company's failure to properly mark the location of the service line for the sewer contractor, Joseph Visco. It therefore follows that the failure of an adequate supply of water to plaintiff's plant was caused by the negligence of the water company.

Defendant water company relies heavily on a lower court case, viz.: United Dyeing and Finishing Co. v. Ben Construction Co., 13 D. & C. 2d 420, to persuade this court that, even though said defendant was guilty of a negligent act, it owed no duty to plaintiff to supply water in adequate quantity and was not, therefore, liable for damage resulting from the said negligent act. In that case plaintiff operated a factory and defendant, a construction company (not the supplier of water), negligently damaged the water main. The borough (which was not a party defendant) thereafter turned off the main for repairs, which diminished the supply of water to plaintiff's factory and throughout the area. The suit was against defendant construction company alone. It was held that there was no recovery, and the court gave several reasons for its decision:

1. "We assume that the break in the main caused by defendant's alleged negligence did not cause sufficient diminution of the supply of water to interfere with the operation of plaintiff's plant."

2. The defendant (the contractor . . . not the borough) had no duty to furnish water to plaintiff.

3. There was an independent, intervening cause . . . i.e., the borough's shutting off the water.

4. The result of shutting off the water was not foreseeable by the contractor.

Defendant water company asks the question in its brief: *Is a public utility liable in trespass for consequential damages flowing from a negligent failure to service a member of the general public?*

Plaintiff, on the other hand, phrases its question in the following language: *Is a public water company liable by contract and under the Public Utility Code for damages sustained by a property owner through the negligence of the water company's employes resulting in the severing of a water line to plaintiff's property, which immediately causes plaintiff's factory to cease operation?*

The Public Utility Law of May 28, 1937, P. L. 1053, sec. 401, 66 PS § 1171, provides:

"Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employes, and the public. *Such service also shall be reasonably continuous without unreasonable interruptions or delay.* Such service and facilities shall be in conformity with the regulations and orders of the commission." (Italics supplied.)

Section 1310, 66 PS §1500, further provides:

"If any person or corporation shall do or cause to be done any act, matter or thing prohibited or declared to be unlawful by this act, or shall refuse, neglect, or omit to do any act, matter, or thing enjoined or required to be done by this act, such person or corporation *shall be liable to the person or corporation injured thereby in the full amount of damages sustained in consequence thereof.*" (Italics supplied.)

It is our opinion that the above-quoted law applies to a situation such as the one existing in the case at bar. It was the mandatory duty of the water company to furnish and maintain a reasonable service to plaintiff which service means furnishing an adequate supply of water to plaintiff as shall be necessary or proper for the accommodation, convenience and safety of plaintiff. Such service had to be reasonably continuous and without unreasonable interruptions or delay.

In the case at bar, we find, through a negligent act of the water company, that the service rendered was not only not reasonably continuous and without unreasonable interruptions or delay but amounted to a total failure to furnish said services, to wit, an adequate supply of water for the use of plaintiff in its business. We are further of the opinion that the water company owed a contractual duty to plaintiff to furnish said plaintiff with an adequate supply of water. Plaintiff's factory required, as an absolute essential element in its operation, a large volume of water. This was known to the water company, as the evidence shows, new equipment was installed in 1954 requiring the use of 250,000 gallons of water per day by plaintiff, and the water company recommended and made the necessary installation itself. The water company furnished plans for this installation and installed the necessary pipes. Plaintiff thereafter paid water bills averaging $1,300 to $1,500 per month for this increased service. The water company was, therefore, on notice that plaintiff could not operate its business without what may be called its life's blood, a large and adequate supply of water. When a negligent act of the water company shut off this supply of water, it was the immediate and proximate cause of plaintiff's damage.

The water company has cited a number of cases in its brief, namely: Thompson v. Springfield Water

Company, 215 Pa. 275; Rainey v. Natrona Water Company, 49 D. & C. 152; and Hudak v. Scranton Spring Brook Water Service Company, 39 D. & C. 346, in an endeavor to show that a water company is not liable for failure to supply an adequate supply of water, even though such failure was caused by negligence. We cannot agree that these cases are in point with the case at bar, for each case concerns failure of adequate water supply to put out fires. The law of Pennsylvania is clear that the water company cannot be held liable for the damage incurred by the fire. In the case of Hudak v. Scranton Spring Brook Water Company, supra, the court stated that the firemen were "unable to say at what point the fire could have been stopped with an adequate supply of water." In the case at bar, the damages were clearly and precisely established and were the immediate, proximate result of the water company's negligence.

We are convinced that the present case is much better exemplified by the case of Miller v. Wilkes-Barre Gas Company, 206 Pa. 254. In that case, a utility chartered for the purpose of supplying gas to a municipality and the individuals residing therein (as is the Philadelphia Suburban Water Company to furnish water) refused to supply gas to a tenant because the tenant refused to pay the bill of a former tenant (which he was not obligated to pay legally). After the gas company shut off the gas, the tenant sued to recover damages, including his loss of profits and other business expenses incurred. Although the court held that the proof of damages was not sufficient and granted a new trial, the Supreme Court ruled that such a suit for failure to supply the service as required would lie and stated on page 260:

"We will not say that he is entitled to only nominal damages. If his expenses for lighting by lamps was greater, or his payment for services increased, his

damages may be more than nominal, but they are not more by any sufficient evidence of loss of profits."

The court further stated on page 257:

"Therefore, defendant not only had the power under its charter to supply gas to the public, it also took on itself the obligation to supply it to the general public, and also, in the words of its charter, to supply it 'to such individuals residing therein (that is in the borough), and in the immediate vicinity as may desire a supply of the same.' The defendant was bound to supply the plaintiff with gas if he desired the same. That he did desire it cannot be questioned; that defendant refused to supply it cannot be questioned."

Another case contained in plaintiff's brief is also very much in point, viz: Hoehle v. Allegheny Heating Company, 5 Pa. Superior Ct. 21. This case is even stronger than the Miller case, supra, in favor of plaintiff's theory of the case at bar. In the Hoehle case, a natural gas company, formed to supply gas to the public, negligently failed to furnish gas to one of its customers. The customer used the gas for heating his house. As a result of the lack of gas, the customer contracted pneumonia and died. It was held that plaintiff, customer's widow, had a cause of action for the negligent failure to supply an adequate supply of gas and that the death of plaintiff's husband was a proximate result of the failure and compensable.

Concerning the damages suffered by plaintiff through the illness and death of her husband, the court said in the Hoehle case, supra, on page 27, the following:

"There was no intervening agency and no evidence of negligence in the treatment of the disease, and whether it was caused, or a relapse from a convalescent condition was caused, by this sudden chilling of the room was a question for the jury. The thing that was

likely to happen did happen, and there is no other probable cause of its happening disclosed in the evidence . . ."

An exhaustive annotation concerning the measure and amount of damages for breach of duty to furnish water, gas, light or power service is set forth in 108 A. L. R. 1176, et seq. Among other things, the writers and cases there state:

"Where there is a failure on the part of a public utility to furnish water to a consumer, assuming there is a breach of duty on the part of the former in this regard, the damages which the latter may recover are, of course, as in other instances, those which flow naturally from the breach, as a proximate result thereof, and may include, for example, damages for expense and inconvenience thereby caused to the consumer, the value of the property lost thereby, loss of rent, etc. The particular items of damages, together with the circumstances under which the loss occurred, are shown in the cases which follow. . ."

See also, Morgan v. Duquesne Borough, 29 Pa. Superior Ct. 100, and Boyle v. Pittsburgh, 145 Pa. Superior Ct. 325.

The exceptions filed on behalf of defendant in this case must be dismissed. Therefore, the following is hereby entered:

*Order*

And now, March 16, 1959, exceptions having been filed by defendant to the award made herein to plaintiff, and the matter having been duly argued before the court en banc, and after due and proper consideration, it is hereby ordered, adjudged and decreed:

1. That the exceptions heretofore filed by the defendant in this case be and they are hereby dismissed; and

2. That judgment be and it is hereby entered in the sum of $2,306 in favor of Advance Specialty Company, Inc., and against the Philadelphia Suburban Water Company, together with interest thereon of six per cent from September 24, 1958, and the costs of the case.

3. An exception is hereby granted to defendant, the Philadelphia Suburban Water Company, to the action taken herein.