Jennie Hoehle *v.* Allegheny Heating Company, Appel-
lant.

*Actions—Tort arising from contractual relations.*

It is a well settled proposition that in certain relations duties are im-
posed, the breach of which is regarded as a tort, though the relations
themselves are formed by contract, and the contract may cover the same
ground.

*Tort—Cause of action—Negligent service of a public corporation.*

Companies, like telegraph, telephone, gas and other such companies
which have received from public authority franchises which also provide
for the accommodation of the general public, owe a duty to serve all per-
sons who make proper application for such service and who comply with
such reasonable rules as may be fixed and make such reasonable compen-
sation as may be required.   A refusal or neglect to render such service
when asked or contracted for may give a cause of action ex delicto.

*Tort—Cause of action—Negligence of gas company.*

The negligent failure, by a natural gas company, to supply fuel gas,
the same being suddenly cut off without notice, to the damage of the health
of one of its customers, gives a cause of action for tortious injury which is

not dependent upon a specific contract nor subject to be defeated by proof that there was a contractual relation between the parties.

*Proximate cause—Question for jury.*

Plaintiff's husband convalescent from typhoid fever suffered a relapse into pneumonia from which he died, immediately after defendant company had wrongfully cut off the fuel gas whereby the patient's room had become suddenly chilled. *Held,* that the breach of duty in turning off the gas was not so remote a cause of the husband's death as required binding instructions for the defendant; the question whether defendant's negligence was the proximate cause of the injury was for the jury under all the circumstances of the case.

Argued April 12, 1897.  Appeal, No. 27, April T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny County, May Term, 1892, No. 384, on verdict for plaintiff.  Before Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ.  Affirmed.

Trespass to recover damages for death of plaintiff's husband claimed to have resulted from defendant's alleged negligence. Before Kennedy, P. J.

Plaintiff, with her husband, lived in the city of Allegheny and their house was heated by means of natural gas which it is the business of the defendant company to supply as fuel.  The company having occasion to make some alterations or repairs along their line, turned off the gas on a November morning. Notice was given to the customers generally, but defendant failed, negligently as it was alleged, to give notice to the plaintiff.  Her husband, convalescing from an attack of typhoid fever, was sitting in a room heated by defendant's gas; suddenly, because of the turning off the gas, the room became cold, the husband was attacked with a chill and as the result, the physician testified, a few days thereafter he died.

The defendant submitted the following points, all of which were refused: 1. Under the pleadings and evidence in this case the verdict should be for the defendant.  2. The damages claimed in this case are not such as naturally flowed from the breach of contract.  3. No recovery can be had because the injury complained of is too remote.

Verdict and judgment for plaintiff for $445.42.  Defendant appealed.

*Errors assigned* were (1–3) the refusal of defendant's points, reciting same. (4) Error in charging the jury as follows : " If you find a verdict at all for the plaintiff, the only element of damages for your consideration will be the loss of wages, and this the counsel claim only to be entitled to during the time of her widowhood. It is shown that her husband died in November, 1891, and she was married again, according to the certificates from Butler county, in December, 1892, a little over a year—about thirteen months. She says herself that she was not married for seventeen months. The counsel for plaintiff claim only for the loss of the man's earnings or wages that would come to her during that time, or during the time of her widowhood, and if entitled to anything, she would not be entitled to the whole of his wages, because he must be maintained out of those wages, but only the wages that would come to her for the support of herself and family during this time."

*J. H. Beal,* with him *W. B. Rodgers,* for appellant.—The plaintiff's action is brought in trespass, while her right to recover rests upon, and the damages she seeks to recover, are for an alleged breach of contract; therefore, the action should be assumpsit, and the plaintiff was not entitled to recover : Cooley on Torts, p. 2 ; Russell & Co. v. Abstract Co., 87 Iowa, 233 ; Rich v. Railroad Co., 87 N. Y. 382 ; Railway Co. v. Roemer, 1 Tex. Civ. App. 191.

The damages are too remote : Swanson v. Crandall, 2 Pa. Superior Ct. 85 ; Hobbs v. Railway Co., 10 Q. B. 111 ; Car Co. v. Barker, 4 Col. 344 ; Eschback v. Hughes, 7 Misc. Rep. 172 (N. Y. 1894) ; Scheffer v. Railway Co., 105 U. S. 249 ; Fairbanks v. Kerr, 70 Pa. 86 ; Allegheny v. Zimmerman, 95 Pa. 287 ; Railway Co. v. Trich, 117 Pa. 390.

*Rody P. Marshall,* with him *Thos. M. Marshall,* for appellee.— As was stated in a recent case, " The act of 1885 declares the transportation and supply of natural gas to be a public use, confers upon the corporations organized under its provisions the right of eminent domain, and requires them to furnish natural gas to consumers along their lines : " McDevitt v. The Gas Company, 160 Pa. 367 ; Dungan v. Read, 167 Pa. 393.

A case exactly like the present one, and in which all the

points raised in this case were decided, has been lately decided by the Supreme Court of Indiana. It is James B. Coy v. The Indianapolis Gas Co.

See also Rushville v. Gas Co., 132 Ind. 575; Gibbs v. Gas Co., 130 U. S. 396.

Generally the question of proximate cause is for the jury: Fairbanks v. Kerr, 70 Pa. 86; Lehigh Valley Railroad Co. v. McKeen, 90 Pa. 122; Pennsylvania Railroad v. Hope, 80 Pa. 373.

OPINION BY RICE, P. J., July 23, 1897 :

A tort is generally defined to be " a wrong independent of contract," but this broad definition, when correctly understood, is entirely consistent with the well settled general proposition that in certain relations duties are imposed, the breach of which is regarded as a tort, though the relations themselves are formed by contract, and the contract may cover the same ground. " Thus " says Judge COOLEY, " the general duties of a common carrier are prescribed by law, and a failure in performance is a tort, though there is in every case of the delivery of property for carriage an express or implied contract covering the terms. The case is similar as between the innkeeper and his guest as regards the goods the one intrusts to the other for keeping, and between the professional man and his patient or his client, as to whom the relation itself imposes the duty of integrity and fidelity in respect to all dealings which come within it : " Cooley's Elements of Torts, 25. " In like manner," said the Supreme Court of Indiana, in a recent well considered case strikingly similar to the present in its facts, " it has been held that telegraph, telephone, water, and other like companies, that have received from public authority franchises which also provide for the accommodation of the general public, owe a duty to serve all persons who make proper application for such service, and who comply with such reasonable rules as may be fixed and make such reasonable compensation as may be required. Persons or corporations enjoying such public franchises, and engaged in such public employment, are held in return to owe a duty to the public as well as to all individuals of that public who, in compliance with established customs or rules, make demand for the beneficial use of the privileges and advantages due to the pub-

lic by reason of the aid so given by public authority:" Coy v. Indianapolis Gas Co., Supreme Court of Indiana, January, 1897. Hence it was held that a complaint in an action of tort was not demurrable which alleged the defendant gas company contracted to furnish gas for plaintiff's house; that relying thereon, plaintiff made no other arrangement for heat; that during severe winter weather while plaintiff's child was sick, defendant failed to supply the gas; that defendant was notified of the failure, as required by the contract, and also of the child's sickness, and plaintiff's vain efforts to get fuel elsewhere; that after plaintiff's failure to get fuel from any source the house became so cold that the child died by reason of the low temperature, and that its death was approximately caused by defendant's breach of the contract. The duty of an employer to furnish his employee with suitable appliances arises by implication of law out of the relations of the parties whether there be an express contract covering the case or not, and a breach of that duty whereby the employee is injured and suffers damages is a tort: Romberger v. Henry, 167 Pa. 314. The relation between a bailor and bailee of property for hire has its origin in contract, but independently of the contract the law imposes duties as to the care and the return of the property, for the breach of which an action ex delicto may be maintained: Dungan v. Read, 167 Pa. 393. Illustrations might be multiplied indefinitely but it is unnecessary. The defendant company was engaged in the business of supplying natural gas as a fuel to residents of the city of Allegheny, through pipes laid under the public highways. It undertook to furnish gas to heat the plaintiff's house, and it is not intimated that she had failed to comply with any reasonable regulation of the company necessary to entitle her to a continuance of the supply. From the nature of the business, and out of the relation thus established between the parties, the law, independently of the contract, implied certain duties on the part of the company. A breach of its duty by turning off the supply of gas in cold weather capriciously or without reasonable notice or attempt to give notice to the plaintiff, when such notice was possible, followed up by a neglect or refusal to turn it on upon being notified and requested to do so, was a distinct wrong, and the right to recover compensation for the tortious injury was neither dependent upon the existence of a specific contract nor

subject to be defeated by proof that there was a contractual relation between the parties. To say that the failure to give notice to the plaintiff, as it was given to other consumers who received their supply from the same main, was due to the mistake of the company's servants in supposing that her house was connected with another main is no answer. It was the company's duty to know with which main her house was connected. Its mistake was due to its own negligence. A wrongful or malicious intent is not an essential element of the tort complained of. If a man will set about actions attended with risk to others the law casts on him the duty of care and competence. It is equally immaterial that the defendant may have bound himself to do the act or to do it competently. The undertaking if undertaking there was in that sense is but the occasion and inducement of the wrong. From this root, says the learned writer, from whom we are quoting, we have, as a direct growth the whole modern doctrine of negligence : Pollock on Torts, 433. Applying these principles to the facts of the present case the action was properly brought in tort.

The defendant's remaining propositions are as follows : (1) The damages which the plaintiff seeks to recover, namely, for the death of her husband, are too remote—they were not the natural and probable consequence of the defendant's breach of contract or duty; (2) even if such breach did in the least contribute to cause the death of the plaintiff's husband it was not the efficient and proximate cause; (3) in any event there was no testimony to show that the turning off the gas was the cause either proximate or remote, of her husband's death, and, therefore, the court should have directed a verdict for the defendant. These propositions may be considered together. The facts as alleged by the plaintiff were that her husband had been taken ill on October 27, 1891, and was threatened with typhoid fever or typhoid pneumonia; that on November 3d he had so far recovered that his physician deemed it unnecessary to make further visits, and gave him permission to sit up on the following day; that he sat up on November 4th for a short time, and on November 5th arose about eight o'clock; that about half past eight the gas was turned off without warning, and he went back to his bed; that the plaintiff made ineffectual efforts to learn from the company the reason why the gas was turned off,

and to have it turned on again; that failing in these she borrowed coal from a neighbor and, about ten o'clock, as soon as it was possible to make necessary changes in the grate, kindled a coal fire; that in the meantime before the change could be made, the room had become cooled; that about eleven o'clock her husband took a chill, pneumonia symptoms developed at once, and from that time he gradually grew worse until November 14th when he died. The attending physician testified that the effect of such a change of temperature upon a man in his condition at that time would very likely be to " develop what he got—pneumonia." There was no intervening agency and no evidence of negligence in the treatment of the disease, and whether it was caused, or a relapse from a convalescent condition was caused, by this sudden chilling of the room was a question for the jury. The thing that was likely to happen did happen, and there is no other probable cause of its happening disclosed in the evidence. To require absolutely positive testimony of the causal connection between the chilling of the room and the disease which terminated in death in order to carry the question to the jury would be to require medical men to possess omniscience. The case of Davies v. McKnight, 146 Pa. 610 is in point. In an action for causing the death of a person by unlawfully furnishing liquor to him, the testimony tended to show that the deceased in consequence of intoxication so caused, fell into a gutter of water and became thoroughly chilled; that he at once became sick, exhibiting symptoms of bronchitis, and after two or three days symptoms of pneumonia. On appeal it was held, that the immediate cause of death being pneumonia, and there being medical testimony tending to show that the exposure would be likely to cause pneumonia the question of the cause of death was for the jury. " It is not easy," said the court, " in a case of this kind, to trace with absolute certainty the death to its proximate cause. But the liquor was undoubtedly the proximate cause of his falling into the gutter and the consequent exposure, and it was for the jury to find whether the attack of pneumonia was the result of the exposure; in other words a continuous causation from the furnishing of the liquor." So here the medical testimony was as positive as the nature of the question upon which the witness was asked to testify would permit, and was uncontradicted. No man, however great his

knowledge of medical science, could swear with absolute certainty that the relapse of the patient was caused by the sudden change of the temperature of the room, but under all the testimony there was such strong probability that it was the cause that the court could not do otherwise than submit the question to the jury. There remains the question whether it was the proximate cause of death. The doctrine as to remote and proximate cause as held in Pennsylvania has been thus stated in many cases. "In determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence ; such a consequence as under the surrounding circumstances of the case might have been foreseen by the wrong doer as likely to flow from his act:" Hoag v. R. R. Co., 85 Pa. 293 ; Pass. Ry. Co. v. Trich, 117 Pa. 390 ; Swanson v. Crandall, 2 Pa. Superior Ct. 85, and cases there cited. Some stress is laid on the fact that the company had no knowledge of the illness of the plaintiff's husband. But had they a right to act on the assumption that all the consumers of gas for fuel were in sound health and therefore, able to endure the change of temperature without ill results ? Clearly not. This is not a case where the defendant's negligence concurred with something extraordinary or unusual to produce the result. It was the company's duty to consider what would likely be the effect of their act upon sick as well as well persons. As the learned judge who rendered the opinion of the majority of the court below well says : "As a rule, persons who burn gas have no other fuel in their houses. Grates, stoves and furnaces when fitted for burning gas are thereby unfitted for burning other fuel. To turn off the gas is to deprive the customers of the means of heating their houses. To turn it off without notice on a winter morning is to subject them, whether strong or weak, well or sick, to the colds of winter without fuel. Can any court say that sickness and death are not consequences which might or ought to have been foreseen as likely to result from such an act? Could we not with more reason say that in the very nature of things, such sudden withdrawal, without warning, of the means of producing artificial heat would, if applied to any considerable number of consumers of gas, certainly in some case or cases, result just as it did in the case of plaintiff's husband?" We conclude without further elaboration that under

all the circumstances the question whether the defendant's negligence was the proximate cause of the injury was for the jury, and therefore, the defendant's points requesting binding instructions were properly refused. See Fairbanks v. Kerr, 70 Pa. 86 ; L. V. R. R. Co. v. McKeen, 90 Pa. 122 ; Haverly v. R. R. Co., 135 Pa. 50 and cases there cited ; Davies v. McKnight, 146 Pa. 610 ; Malone v. R. R. Co., 152 Pa. 390 ; Sturgis v. Kountz, 165 Pa. 358.

Judgment affirmed.