# Stephenson *v.* Pennsylvania Railroad Co., Appellant.

*Railroads—Fire by sparks—Burning of woodland—Accumulation of rubbish on right of way—Negligence—Province of court and jury.*

In an action against a railroad company to recover damages for injuries to property resulting from a fire communicated from engines where the only negligence alleged is the improper construction or management of the company's engines, the burden is on the plaintiff to prove that the fire was communicated by some engine of the company, and also to prove negligence in the construction or management of the engines. Such facts, however, may be established by circumstantial evidence. This rule, however, does not mean that no other negligence except in the construction or management of the engine can be alleged and proved as the ground of recovery. Thus the negligent accumulation of combustible rubbish on the right of way to which fire may be communicated by sparks and from which fire may be communicated to neighboring woodlands may be the basis of recovery for the destruction of such woodlands.

In an action against a railroad company to recover damages for the burning of woodland, the plaintiff alleged negligence in the construction and management of the defendants' engines, and also that the defendant negligently permitted combustible material to accumulate on its right of way, the evidence showed that near the plaintiff's woodlands and on the

defendants' property, weeds, briars and bushes had been cut and allowed to remain, and that the accumulation had been added to by leaves blown by the wind and caught in the brush.   A witness for the plaintiff testified that the fire started in the  accumulation of rubbish, that it began after a train had passed, that at the point where the fire started, there was a heavy grade, and that the engines going up the grade emitted sparks and cinders.   Defendants' witnesses testified that the fire originated on the plaintiff's land and  spread towards the railroad.   There was no evidence of the defective construction of defendants' engines.   *Held* that the case was for the jury, and that a verdict and judgment for plaintiff should be sustained.

Argued Nov. 20, 1901.    Appeal, No. 133, Oct. T., 1901, by defendants, from order of C. P. Chester Co., Aug. T., 1900, No. 55, on verdict for plaintiff in case of Caroline M. Stephenson v. Pennsylvania Railroad Company.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover  damages for  loss occasioned by burning of plaintiff's woodland.   Before BUTLER, J.

At the trial the plaintiff produced evidence which tended to show that the defendant had permitted  combustible rubbish to accumulate on its right of way, and that a fire was started from this rubbish by sparks from an engine resulting in the burning of plaintiff's woodlands.

The court charged in part as follows :

[Under all the evidence, you will determine first, whether the plaintiff has satisfied you that this fire was communicated to this accumulation, as the plaintiff contends it was, by a passing train.] [3]   If it was not, that is the end of the plaintiff's case.   If it was, then you pass to a second question.   [Assuming that you find that this accumulation was fired, the next question would be, was the accumulation the efficient cause, or substantial cause, of the plaintiff's injury.] [4]   In other words, if that accumulation had not been there, and a spark had been thrown where it was and as it was, would there have been any fire, or any substantial fire, that would have communicated the fire and injury to this plaintiff?   If not, if without this accumulation there would have been no disastrous results, no substantial fire, then the accumulation is the efficient cause

of the fire.   If the accumulation did not cause this fire, or did not substantially contribute to it, then it is of no importance in this case.    But if, I repeat, it is the real cause, the efficient cause, the proximate cause, of the plaintiff's injury; if, by reason of its presence what would otherwise have been no fire, or no considerable fire, did become a considerable fire, and afterwards by transmission through this surrounding timber was carried to the plaintiff's property and injured or destroyed the plaintiff's property, then this growth, or rather this accumulation complained of, was the efficient cause of the plaintiff's injury, and the defendant would be chargeable in such case with the causing of this injury to the plaintiff.   [If you find, then, that the fire was thus communicated by the defendant to this accumulation, and that this accumulation was the reason for and the efficient cause of the plaintiff's injury, then you will go to the third and last question and determine whether the defendant company was guilty of negligence in having and permitting that accumulation to be where it was.] [5]   In other words, whether it should have been foreseen that with the surroundings and all the conditions which the evidence shows to have been present, that accumulation was a menace to the surrounding and adjoining property.   If in the exercise of due and reasonable care the defendant should have recognized that this accumulation was a menace, that it was reasonably likely to foster and to spread a fire, that by reasonable and natural steps, for instance, by the communication through surrounding woods, would reach, as in this case the fire did reach, the plaintiff's property, then the company was guilty of negligence in leaving it there.   If it was simply a slight accumulation, what the trees would naturally yield in the way of broken branches, and leaves blown by the wind, and so on, then of course the company would not be called upon to remove this accumulation.   [But, if, as the plaintiff has sought to satisfy you, it was an accumulation made up of the clearing away of the growth each year that had been on the twelve to seventeen feet of ground immediately contiguous to the railway, if it was of such substantial dimensions and was filled in with leaves and other rubbish as that this company ought to have foreseen that its presence there was a menace and a danger that under the surrounding circum-

stances, by natural relation to other conditions present, would be reasonably likely to work an injury, as was worked here to this plaintiff, in connection with sparks which might reasonably be thrown from the company's locomotives, then the company would be guilty of negligence in leaving the accumulation there.] [6]    So that in order that the plaintiff may recover, I say to you in conclusion that the plaintiff must first have satisfied you, reasonably and fairly, that this accumulation was fired by one of the defendant's locomotives, that that accumulation being there was the efficient proximate cause of the plaintiff's injury, and that under all the circumstances the presence of that accumulation fixed the defendant company with a negligent act; that the defendant company should have foreseen that the presence of such an accumulation was like to result, as, if you find the preceding propositions I have submitted against the company, it did result to this plaintiff.

Verdict and judgment for plaintiff for $275.    Defendant appealed.

*Errors assigned* among others were (3–6) above instructions, quoting them.

*John J. Pinkerton*, for appellant.—In this action the burden is on the plaintiff to prove that the fire was communicated by some engine of the defendant company, and also to prove negligence in the construction or management of such engine, and, if the engine was furnished with approved spark arresters and ash pan, and was in good working order, the company would not be liable, although the burning was occasioned by fire accidentally issuing from it: Albert v. Northern Central Ry. Co., 98 Pa. 316; Phila. & Reading R. R. Co. v. Yerger, 73 Pa. 121; Howard Express Co. v. Wile, 64 Pa. 201; Phila. & Reading R. R. Co. v. Hendrickson, 80 Pa. 182; Erie Ry. Co. v. Decker, 78 Pa. 293; Jennings v. Penna. R. R. Co., 93 Pa. 337; Henderson v. P. & R. R. R. Co., 144 Pa. 461.

The inception of this fire having been caused by no negligence upon the part of the defendant, the mere fact that it started upon and passed over the property of the defendant before reaching the plaintiff, does not make the defendant company liable, nor prove any negligence on its part, and the com-

pany, therefore, is not liable to answer in damages to the plaintiff : Taylor v. Penna. Schuylkill Valley R. R. Co., 174 Pa. 171.

There was not a particle of evidence introduced by the plaintiff in this case tending to prove that her woods were set on fire by the company's engines.

*Thomas W. Pierce*, with him *John D. Baltz*, for appellee, cited : Henderson v. P. & R. R. R. Co., 144 Pa. 480.

OPINION BY RICE, P. J., April 21, 1902 :

This was an action of trespass for damages alleged to have been sustained by reason of the burning of standing timber on a tract of woodland belonging to the plaintiff, negligently fired by the locomotive engines of the defendant company. The piece of woodland lies to the south of the railroad, and between it and the railroad is a narrow strip of sprout land from fifty-eight to sixty-five feet in width owned by the defendant. The distance from the edge of this sprout land to the edge of the bluff caused by the railroad cut at that point is from ten to seventeen feet, according to the varying testimony of the witnesses. There was testimony to the effect that the growth of weeds, briars, huckleberry bushes and the like in this space, which also belonged to the defendant, had been cut and cast along the edge of the uncleared sprout land and allowed to remain, and that the accumulation had been added to by leaves blown by the winds and caught in the brush. Being asked what accumulation in amount or quantity there was along there, the witness answered : " There was a good deal. Q. About how high would be the heap ?   A. I suppose it was a foot high along there.   By the Court: Q. Do you say it was pretty much continuous along the edge of the woods ?   A. Yes, sir." The sprout land bordered by this accumulation was left in its natural state, having on its sprouts and young trees of fifteen years' growth and under, and "the leaves that would fall and the brushwood that would die in the sprouts." Immediately adjacent was the plaintiff's woodland.

The court charged the jury that the plaintiff could not recover unless they found : (1) that the accumulation of rubbish as above described was fired by a passing train of the defend-

ant; (2) that the accumulation of rubbish was the efficient cause of the plaintiff's injury, in other words, that if it had not been there, a spark thrown " where it was and as it was " would not have caused a fire that would have communicated to the plaintiff's land; and (3) that the defendant, in the exercise of ordinary prudence, ought to have foreseen that this was the natural and probable consequence of leaving the rubbish there, and guarded against it.   The instructions of the court upon these questions were full and clear, as will appear upon a perusal of the charge as a whole, and could have left no doubt in the minds of the jurors that if either of the above essentials was not satisfactorily proved, the plaintiff could not recover. This being so, their verdict necessarily implies a finding of all these facts, but not a finding that there was negligence on the part of the defendant either in the construction or the management of its engines.

The defendant's counsel contends that binding instructions should have been given, because, first, there was not sufficient evidence to warrant a jury in finding that the fire was caused by sparks thrown from the defendant's engines, or even that it originated on the defendant's land; second, even if those facts were established and the conditions were as claimed by the plaintiff, no negligence, which was the proximate cause of the injury, was shown, and this should have been declared as matter of law; and, third, the negligence alleged in the plaintiff's declaration was in the construction and management of defendant's engines, and there was no evidence to sustain this allegation.   This we believe to be a fair statement of the defendant's position, although for our convenience we have not followed the precise order followed by counsel in his printed argument. Obviously, the questions above suggested must be considered from the standpoint of the plaintiff's evidence.   Her case depended almost altogether upon the testimony of her tenant, which was in conflict in at least two of its essential features with the testimony of the defendant's witnesses.   As has been said in another case, " no doubt the eyes of some witnesses are livelier than those of others, and the sense of sight may be quickened or diminished by the interest or bias of him who possesses it," but it was not the province of the trial court, nor is it ours, to say that the testimony upon which the plaintiff

relied and which the jury credited was unworthy of credence. Binding instructions for the defendant could not be sustained upon that ground.

The fire occurred on Friday, April 6, 1900. The witness above referred to testified, that about nine o'clock on that morning, when being north of the railroad and about a quarter of a mile distant from the cut, he saw a fire, which he at first thought was a tie fire, on the property of the defendant, and about six or eight feet from the edge of the bluff made by this cut; that a pretty strong wind was blowing from the northwest; that it was a clear day, the atmosphere was dry and it had not rained recently; that the fire grew bigger and ran in the direction the wind was blowing, which was in the direction of the plaintiff's woodland, and finally passed over the rise of ground out of his view; that on the following Monday he visited the burnt district, but that he based his testimony as to where the fire commenced upon what he saw on Friday. The following brief extract from his testimony upon cross-examination may be pertinently quoted in this connection: "I knew where it commenced before I went up, but I did not know where it went. . . . Q. You could see the ground a quarter of a mile away, the ground on which this fire was burning? A. Yes. Q. And could tell where it was burning, the exact spot? A. I could tell the exact spot by a telegraph pole there. Q. What enables you to do that? A. One telegraph pole was standing and another was lying down close by it." The testimony of this witness as to the place where the fire originated was corroborated by the testimony of other witnesses as to the appearances of the burnt district and the direction of the wind on the day of the fire. Notwithstanding the testimony of the defendant's witnesses to the effect that the fire originated on the plaintiff's land and spread towards the railroad, the question was clearly for the jury. The railroad has four tracks. It is an undisputed fact that trains frequently passed the point in question. The defendant showed that six trains passed Malvern tower, which we infer is not far distant, between four minutes after, and twenty-two minutes after nine o'clock, A. M., amongst which was a passenger train passing eastward at 9.13, A. M. The plaintiff's witness testified, that, while he did not notice the train, the time when he saw the fire springing up was about

nine or quarter after nine o'clock, and about the time, but after, when the train last mentioned usually passed the point in question. At that point trains going eastward are on an up grade—one of the witnesses described it as " quite a heavy grade going east"—and there was testimony that the engines going in that direction emitted sparks and cinders, which when the wind was strong enough were carried a considerable distance. No witness testified that the fire was caused by sparks or cinders from the defendant's engines, and if the evidence simply gave rise to mere conjecture that such was the cause, it would not be sufficient. But it is impracticable in most cases to establish such a fact by the direct testimony of eyewitnesses. The law does not absolutely require that kind of proof, nor even proof of facts which precludes possibility of doubt as to the fact in question. The Pennsylvania reports show that numerous recoveries have been sustained where the fact that the fire was caused by sparks and cinders emitted from the company's engines was based wholly upon circumstantial evidence, not a whit more conclusive than that presented by the plaintiff in this case. In Henderson v. Philadelphia & Reading R. R. Co., 144 Pa. 461, at p. 479, a case twice argued, the following statement of the rule upon this subject was quoted with apparent approval : " It devolves upon the plaintiff to prove by a preponderance of evidence that the fire was communicated by sparks or cinders from the railway engines. It need not be shown that any particular engine was at fault, but it will be sufficient if the fire is proved to have been set by any engine passing over defendant's railway, and the evidence may be wholly circumstantial ; as, first, that it was possible for fire to reach the plaintiff's property from the defendant's engines ; and, second, facts tending to show that it probably originated from that cause, and from no other." The same principle was distinctly recognized in Matthews v. Pittsburg & Lake Erie R. R. Co., 18 Pa. Superior Ct. 10. We deem it unnecessay to cite other authorities or to further discuss the evidence. Our conclusion is, that, if the fire originated at the time and place fixed by the plaintiff's witnesses—which was a question for the jury—then, in view of the other circumstances, the probability that it was caused by sparks or cinders emitted from the defendant's engines, and not otherwise, and that it be-

came a destructive fire by reason of the accumulation of rubbish, was sufficiently strong and reasonable to warrant the jury in their first two findings, which at the outset of this opinion are stated as implied in the verdict.

We come then to the question whether upon the facts established by the verdict the court should have declared as matter of law that the plaintiff could not recover. It is argued that this question is not an open one in view of the decision of the Supreme Court in Taylor v. Pennsylvania Schuylkill Valley R. R. Co., 174 Pa. 171. We quote from the opinion in that case: " The learned judge told the jury that the fact that the fire originated on the right of way was not proof of negligence. It does not appear that he was asked to submit the condition of the right of way to the jury, nor was there proof of any combustible matter upon it aside from the fact that the weeds and grass cut upon it the previous autumn had remained on the ground during the winter. This would not have supported a charge of negligence without more, nor would the fact that the fire originated on the right of way." In view of this statement of the facts upon which the court grounded its decision and the further statement, that it did not appear that the trial court was asked to submit the condition of the right of way to the jury, it is manifest that the precedent is not one which controls the decision of a case like the present. In determining whether a conclusion of law in any adjudicated case is a precedent in a subsequent one, the value of the first usually is measured by its similarity or dissimilarity to the second in its controlling facts; the conclusion to be of any value as a precedent must be taken as applicable to the facts, as assumed by the court: Yoders v. Amwell Township, 172 Pa. 447.

In some of the states of the Union, absolute liability and not merely a prima facie liability for fires set by locomotives, is created by statute. See Matthews v. St. Louis & San Francisco R. R. Co., 25 L. R. A. 161, and cases there cited. In other states, and we believe also in England, it is held that when the plaintiff shows that his property caught fire from the defendant's engine, the burden is on the defendant to disprove negligence: Whart. on Negligence, sec. 870. The learned author says: " This is unquestionably sound law as to unchartered companies. When, however, a company is chartered, and thereby lawfully

uses fire in its engines, the true doctrine is, that it rests on a plaintiff suing it for fire communicated from its engines to show negligence in the company." This is the well established rule in Pennsylvania, as the cases cited in the appellant's brief abundantly show. It follows that, where no other negligence is alleged, and the engine from which the sparks issued, was equipped with the most approved spark arrester in good condition, and there was no negligence or unskilfulness in the management of the engine, there can be no recovery ; " for it is a notorious fact that no spark arrester has yet been invented to prevent all sparks, and a little spark may kindle as large a conflagration as a large one : " Reading & Columbia R. R. Co. v. Latshaw, 93 Pa. 449. In such a case, that is, where no other negligence is alleged, the law is, that the burden is on the plaintiff to prove that the fire was communicated by some engine of the defendant company and also to prove negligence in the construction or management of the engine; such facts, however, may be established by circumstantial evidence : Henderson v. Philadelphia & Reading R. R. Co., supra. The above cited cases and others to the same effect, cited in the appellant's brief, are pertinent here as showing where the burden of proof lies, and also as showing that it is not practicable, and, therefore, cannot be declared to be the legal duty of a railroad company to equip its engines with spark arresters that will absolutely prevent the issuing of any sparks, great or small.

But we do not understand them to decide that in an action for a loss by fire caused by sparks from a locomotive engine no other negligence except in the construction or management of the engine can be alleged and proved as the ground of recovery. True, when a railroad company has paid for its right of way it has paid for all inconveniences which were likely to result from the construction and use of its road ; but this does not cover all sorts of damage, and presumably does not cover damages arising from negligence, for the law never anticipates this in assessing damages, and it is not to be presumed that the company has by contract purchased a general immunity for carelessness. " They are bound to temper their care according to the circumstances of danger (Morrison v. Davis & Co., 20 Pa. 171, 177), and exert more care when the property of others is in danger than when it is not; and their evidence will be

tried by this rule:" Huyett v. Philadelphia & Reading R. R. Co., 23 Pa. 373. We suppose this to be as true when the question for decision turns on the condition of the right of way as when it relates to the condition of the engines and the manner of running them. A rule so rigid and so narrow as to bar recovery for negligence in the former particular, which is shown to be the efficient cause of the plaintiffs' injury, would seem to be inconsistent with the broad general principle upon which railroad companies are held liable for their negligent acts, even though done within the limits of their rights of way. It cannot be asserted that the act or condition of which the plaintiff complains was a necessary incident to the operation of the railroad. Nor on the other hand can it be asserted that it is negligence per se for a railroad company to dispose of the weeds, briars, bushes and the like growing upon its right of way in the manner alleged in this case. Under some circumstances it might be the duty of the court to declare that it was not negligent. But under others it would as plainly be its duty to submit to the jury the question whether in the exercise of ordinary prudence the company ought to have foreseen that the fire which injured its neighbor was a natural and probable consequence of its act. The quantity of the accumulation of rubbish, its condition as to dryness, its proximity to the tracks and to timber or sprout land, the condition of such land, the season of the year, the number of trains passing the point, the grade of the railroad, the fact that some sparks are unavoidably emitted from engines hauling heavy trains on an up grade, the distance that such sparks may ordinarily be carried by the wind and ignite conbustibles upon which they are likely to fall,—these are some of the facts to be considered in determining whether in this case there was absence of care according to the circumstances. In a New York case, very closely resembling the case at bar, it was said: "If, as the defendant claims, the escape of fire from an engine is inevitable and a necessary consequence of its useful employment, the defendant was at least bound to move conbustible material from its path, or at least, prevent such accumulation of rubbish as would in consequence of fire falling upon it be the cause of danger to another property:" O'Neill v. New York, Ontario & Western Ry. Co., 115 N. Y. 579; s. c., 5 L. R.

A. 591. See also Smith v. London, etc., Ry. Co., L. R. 5. C. P. 98, cited at length in Wharton on Negligence, sections 98 and 873; Marvin v. Chicago, Milwaukee & St. Paul Ry. Co., 79 Wisconsin, 140; s. c., 11 L. R. A. 506. We do not go so far as to say that the court ought to have charged that it was the duty of the defendant to remove all combustible material from its right of way or to prevent such an accumulation of it as was described by the plaintiff's witness. But we are clearly of opinion that it would have been gross error for the court to declare as matter of law that the defendant had an absolute right to gather together and retain on its right of way such an accumulation of combustible rubbish as would in consequence of fire falling upon it be the cause of injury to the property of an adjoining owner, and that it was not responsible for the natural and probable consequences of its act. Whether it was negligent in this particular, and whether the injury was such a natural and probable consequence of the negligence that it might and ought to have been foreseen as likely to follow the act, were questions for the jury: Penna. R. R. Co. v. Hope, 80 Pa. 373; Potter v. Natural Gas Co., 183 Pa. 575, 589; Thomas v. Central R. R. Co. of N. J., 194 Pa. 511, 515; Hoehle v. Allegheny Heating Co., 5 Pa. Superior Ct. 21.

The remaining point to be noticed is that the negligence declared on was in the construction and management of the defendant's engines, and as this was not proved the plaintiff could not recover under the pleadings. It is true that this was alleged, but it was also alleged that the defendant unnecessarily and negligently permitted combustible materials to be upon its railroad and did not take proper care that the plaintiff's growing timber should not be burned and that the sparks and cinders that escaped from its engines set fire to this combustible material, whereby her woodland was burned. Possibly if the case turned solely on the allegation of negligence in the construction or management of the engine, the point would be well taken. But she alleged and proved enough without that to entitle her to recover. As was said in Thomas v. Central Railroad Co. of N. J., 194 Pa. 511, " There was no variance which can be held substantial after verdict."

Judgment affirmed.