# Shaughnessy *v.* Pittsburg, Appellant.

*Negligence—Extraordinary flood—Waters.*

Ordinary care does not call upon a person to protect against an extraordinary flood.

An extraordinary flood is not simply an unusual flood that does not occur often, but it is a flood which an ordinarily prudent man in the exercise of reasonable judgment would not expect to occur at all.

In an action for negligence, where the defendant alleges an extraordinary flood as the cause of the loss, and gives evidence to that effect, and witnesses for the plaintiff testify that many times before the stream had been higher than it was at the time of the accident, the question whether the flood was an extraordinary one or not is for the jury.

*Negligence—Proximate and remote cause.*

The test of proximate cause is whether the facts constitute a continuous succession of events so linked together that they become a natural whole, or whether the chain of events is so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause, the alleged negligent act. The injury must be such a natural and probable consequence of the negligence that it might and ought to have been foreseen as likely to follow the act.

*Negligence—Joint tort feasors—Practice, C. P.*

When a plaintiff in an action of trespass to recover damages for negligence declares for a joint tort, and the evidence showed no joint action by the defendants, a verdict and judgment against one defendant for a separate tort cannot stand.

Argued April 19, 1902. Appeal, No. 22, April T., 1902, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1899, No. 528, on verdict for plaintiff in case of John Shaughnessy v. James Friend, M. A. Friend and the City of Pittsburg. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries to a wife. Before McCLUNG, J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiffs for $510. Defendant appealed.

*Error assigned* was in submitting the case to the jury.

*A. M. Thompson*, with him *T. D. Carnahan* and *James C. Gray*, for appellant.—Where the plaintiff in an action of trespass to recover damages for negligence, declares for a joint tort and the evidence shows no joint action by defendants, a verdict and judgment against one of the defendants for a separate tort should not be permitted: Weist v. Electric Traction Co., 200 Pa. 148.

The city of Pittsburg is charged with negligence because it did something which the law required it to do, namely, provide an outlet for its sewers: Blizzard v. Boro. of Danville, 175 Pa. 479; Owens v. Lancaster, 182 Pa. 257.

We contend that in the present case the direct and immediately producing cause of the injury to the plaintiffs was the flood, an act of God, over which the defendant, the city of Pittsburg, had no control and for which it is not responsible, and therefore that the proximate cause of the injury was the flood rather than the act of the city: South Side Pass. Ry. Co. v. Trich, 117 Pa. 390; West Mahoney Township v. Watson, 116 Pa. 344.

*W. J. Brennen*, for appellee.—This case is dissimilar and distinguished from Wiest v. Electric Traction Company, 200 Pa. 148; and from the case of Dutton v. Lansdowne Boro., 198 Pa. 563. In the first case it was shown that J. W. Hoffman & Company, one of the parties sued, was an independent contractor, and in no way responsible for the accident that happened; and the second case went to the jury as to the liability of the property holder and the borough; and in the case of Howard v. Union Traction Company, 195 Pa. 391, where one person aids, assists, or employs another to commit a trespass, or assents to its commission, having an interest therein, a joint action will lie: Bard v. Yohn, 26 Pa. 482.

If there be more than a scintilla of evidence upon a question of fact, it should be submitted to the jury: Gates v. Watt, 127 Pa. 20.

OPINION BY RICE, P. J., July 10, 1902:

This case and the case of John Shaughnessy and wife against the same defendants were tried together, and it is conceded that the facts which determine the liability of the city are the same

in both cases.   The plaintiffs resided in one of the houses known as " Friend Row," which abut on Sawmill run, a small stream which empties into the Ohio river.   The property on one side of the run is owned by J. W. Friend and on the opposite side by M. A. Friend, the latter being the owner of the building in which the plaintiffs lived.   The Friends were joined as defendants with the city, but in obedience to the instructions of the court a verdict was rendered in their favor.   The question of the liability of the city was submitted to the jury and was determined by them in the plaintiffs' favor.

It appears that the rear yards of the houses in " Friend Row " were formed of cinders and ashes and extended to the edge of Sawmill run, being supported and protected from the stream by timber cribbing.   Sixteen or eighteen years ago a dam was constructed on the run about forty or forty-five feet below the plaintiffs' premises.   There was evidence tending to show that the city adopted Sawmill run as an open sewer, and hence, as correctly stated by the learned trial judge, it became its duty to keep it open and remove accumulations of filth and rubbish : Blizzard v. Borough of Danville, 175 Pa. 479 ; Owens v. City of Lancaster, 182 Pa. 257.   The dirt and refuse which were carried down the run gradually filled up the space above the dam so that some of the city sewers which emptied into the run at some distance above the Friend houses were choked, and an offensive stagnant pool was formed.   About August 1, 1898, employees of the city, in order to prevent the obstruction of the sewers and the flow of the stream, cut a " V " shaped section about twelve feet wide at the top and about three feet deep out of the center of the dam, and dug a ditch of about the same depth through the center of the mud that had accumulated in the bed of the stream above.   During the night of August 18, 1898, a very heavy rain caused the stream to rise very rapidly. On the following morning Mrs. Shaughnessy, with her babe in her arms and an older child by her side, was standing in her backyard, when the dam was suddenly washed away, together with the cribbing which supported the made ground upon which they were standing, and all were carried out into the stream. Her two children were drowned and she was injured.

Aside from the question arising out of the joinder of the defendants, the principal questions raised in the court below and

on the argument of this appeal are: first, whether the freshet which carried away the dam and cribbing and the made ground upon which Mrs. Shaughnessy and her children were standing was an extraordinary flood; second, whether the city, acting through its employees, was negligent in what was done to prevent the continued obstruction of the sewers and the flow of the stream, and especially in cutting the " V " shaped section out of the dam; third, whether its negligence was the proximate cause of the injuries complained of.

It is urged that binding instructions should have been given for the defendant because the direct and immediately producing cause of the plaintiffs' injuries was an extraordinary flood, an act of God, for the consequence of which the city cannot be held responsible. The jury were instructed that ordinary care does not call upon one to protect against an extraordinary flood, but were also instructed that an extraordinary flood is not simply an unusual flood, not simply a flood that does not occur often, but it is a flood which an ordinarily prudent man in the exercise of reasonable judgment would not expect to occur at all, and that it was for them to determine whether the flood was of that character. As several witnesses testified that many times before the stream had been higher than it was on August 19, 1898, it would have been manifestly improper for the court to charge that this was one of those extraordinary and unforeseeable occurrences against the consequences of which the city, in the exercise of ordinary care, could not be expected to provide. The question whether it was an extraordinary flood, or one which an ordinarily prudent man exercising reasonable judgment ought to have foreseen as likely to occur, was for the jury, and was submitted to them with clear and adequate instructions, of which no complaint is made. The verdict has established the fact that it was of the latter character.

It is urged, in the second place, that binding instructions should have been given for the defendant, because no causal connection between the city's act and the tearing out of the cribbing and the washing away of the made ground upon which Mrs. Shaughnessy and her children were standing, was shown; in other words, that it was not shown that the effect of the flood was different from what it would have been if the " V " shaped section had not been cut out of the dam. That

the burden of proof in this particular rested on the plaintiffs is clear; but we are not convinced that there was no evidence from which a jury could find the essential fact.  We have already alluded to the evidence as to prior freshets of equal or greater magnitude.  The fact that the dam and cribbing, in their original condition, had withstood their force is of some weight and significance in determining the question whether the cribbing was weakened by reason of the changed condition in which the dam was left.  We do not say that this alone was sufficient to shift the burden of proof to the defendant; but it was a circumstance which the jury were warranted in taking into consideration in connection with other evidence tending to sustain the plaintiffs' contention.  It is true that the testimony of some of the defendants' witnesses tended to show that the giving way of the dam had no effect upon the cribbing; that the cribbing went first.  If the cribbing began to give way before the dam, there would, of course, be no ground for inferring that the action of the city had anything to do with the plaintiffs' injuries, and the court so told the jury.  But the plaintiffs contended, and adduced evidence tending to show, that, although both gave way about the same time, the dam gave way first; that the logs of the dam which had been cut were so fitted into and " tied " to the cribbing that when the great volume of water, brought to the middle of the stream by the trench that had been dug, pressed against the unsupported ends of the logs of the dam and forced them outward, they acted as a lever whereby the logs of the cribbing were pried out of place, with the result that the cribbing and the made ground supported by it were carried away.  The learned judge instructed the jury very carefully and with entire impartiality upon this question of fact.  He said : " It seems to me that this case comes down to that point.  If the structure was not such as that, and if that was not the way the accident occurred—if that didn't bring the cribbing out, then there can be no recovery here.  If, as some of the witnesses say, the cribbing went first at the upper end, of course that would negative this theory of the case.  If it went out through this prying out of those logs, it would go out, of course, at the lower end, and if you find that it was falling out above and then came down, there is nothing to indicate

that the city would be liable.  The cribbing, it seems, was spiked together, and the probabilities are that if one portion of it went, the balance of it would go; especially if the upper portion went, the part below would go. . . . But the question for you to determine is, whether or not the cribbing was pried out in that way."  Presumably the jury obeyed the instructions of the court; therefore, their verdict implies a finding that the cribbing was forced out of place by the great volume of water which pressed against the ends of the logs of the dam which had been cut.  We express no opinion upon the finding further than to say, that there was sufficient evidence that the accident happened in that way to warrant the submission of the question to the jury.  Whether or not this was such a natural and probable consequence of the act of the city in putting and leaving the dam in that condition as in the exercise of ordinary care might and ought to have been foreseen and provided against, was likewise a question for the jury. " The test of proximate cause established by Penna. R. R. Co. v. Hope, 80 Pa. 373, is whether the facts constitute a continuous succession of events so linked together that they become a natural whole, or whether the chain of events is so broken that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause, the negligence of defendants.  And in Hoag v. Lake Shore & Michigan Southern R. R. Co., 85 Pa. 293, the same test was expressed in the briefer form that the injury must be such a natural and probable consequence of the negligence that it might and ought to have been foreseen as likely to follow the act.  Whether we take one form or the other, it is clear that the question of proximate or remote was for the jury : Haverly v. State Line, etc., R. R. Co., 135 Pa. 50 ; Potter v. Natural Gas Co., 183 Pa. 575 ; " Thomas v. Central R. R. Co. of N. J., 194 Pa. 511 ; Hoehle v. Allegheny Heating Co., 5 Pa. Superior Ct. 21 ; Stephenson v. Penna. R. R. Co., 20 Pa. Superior Ct. 157, 168.

The remaining question for consideration arises out of the joinder of the defendants.  In disposing of this question the learned judge below drew a distinction between a case of joining several persons as defendants who, according to the plaintiff's statement, could not be jointly liable, as in Howard v.

Union Traction Co., 195 Pa. 391, and a case where a joint tort is properly alleged in the pleadings, but there is a failure of proof as to all but one of the defendants. He held that in the latter case it was proper to direct a verdict in favor of the defendants as to whom there was a failure of proof and to permit a recovery against the other defendant as if he had been sued separately. It is due to him to say that the case was tried and the question decided before the decision in the case of Wiest v. Electric Traction Co., 200 Pa. 148, was rendered. That case does not recognize the distinction made in this case. The rule as there stated is, " that, when a plaintiff in an action of trespass to recover damages for negligence, declares for a joint tort, and the evidence shows no joint action by the defendants, a verdict and judgment against one defendant for a separate tort should not be permitted." It is conceded, however, that the mistake in bringing a joint action may be cured by proper amendment: Rowland v. Philadelphia, 202 Pa. 50; John v. Philadelphia, 19 Pa. Superior Ct. 277; Dutton v. Lansdowne Borough, 198 Pa. 563, at p. 567. But it is not one of those mere technical or clerical errors which may be corrected here.

The judgment in favor of the plaintiff against the city of Pittsburg is reversed and a venire facias de novo, as to said parties, awarded.