# Cunningham *v.* The Pennsylvania Railroad Company, Appellant.

*Carriers—Railroad companies—Negligence—Flood—Evidence.*

1. In an action against a railroad company to recover for the loss of cement which was destroyed in cars on a siding during a flood, there was testimony that prior to the particular flood the tracks had been raised as a precautionary measure. A witness for the company testified that after the tracks had been raised cars had not been removed from the siding at times of flood. *Held,* that the plaintiff was entitled to show in contradiction of the defendant's witness that cars had been removed subsequently to the elevation of the tracks.

2. The admission of such testimony does not violate the rule that evidence of subsequent precautions taken after the happening of the accident is not admissible to prove antecedent negligence.

3. In general where a carrier by the exercise of reasonable diligence could have foreseen the happening of an event that caused injury to goods in carriage, and he failed to make use of the means at his command to guard against it, and the goods were thereby lost or injured, he will be liable although such loss or injury would not have happened but for an act of God.

4. In an action against a carrier to recover the value of goods lost in a flood, a prognostication of the weather bureau, while evidence, is not conclusive.

Argued April 16, 1909. Appeal, No. 14, April T., 1909, by defendant, from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1907, No. 416, on verdict for plaintiff in case of R. H. Cunningham v. The Pennsylvania Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Reversed.

Trespass to recover damages for the loss of cement. Before COHEN, J.

The facts are stated in the opinion of the Superior Court and the charge of the court, which was in part as follows:

[The bill of lading, offered in evidence, contains a provision that in case of flood the company shall not be liable for loss.

"No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage

thereto by causes beyond its control, or by floods or by fire."
Now they set up as a defense in this case this: they say, "Yes
we did receive these goods, but by reason of the flood the goods
were destroyed or the goods were not delivered." The defend-
ant claims that the burden, therefore, is on the plaintiff to show
negligence on the part of the defendant company, and the plain-
tiff has undertaken voluntarily that burden and has attempted
to prove to you that although the defendant company would be
released in the case of a flood, yet that does not relieve them
from the duty of saving the goods from a flood if they possibly
can, and, as a matter of law, I say to you that if the defendant
had notice from the elemental conditions surrounding it, from
the rising of the river and the falling of the rain, from the ex-
perience of its agents, if they had any, according to the evidence,
they had a right to use it and every precaution which was abso-
lutely necessary to save these goods from the flood if it could be
done. [1]

[There is one very peculiar feature about this case. We have
no information whether the goods were absolutely ruined,
partially ruined or not. All we know is that the goods were not
delivered. And if they were not delivered, through any fault
of the defendant, the defendant is liable to the plaintiff in the
value of the goods as indicated and uncontradicted. But if
the failure to deliver was not on account of any fault what-
soever on the part of the railroad company,—if they did all,
under the exigencies of the occasion, which they possibly could
do to save those goods from the flood, they are not liable, even
though the goods were ruined by the flood, and it becomes then
your duty to simply ascertain whether the loss of these goods,
or the nondelivery of these goods, was caused by any neglect
on the part of the railroad company. If not, and the goods were
destroyed by the flood, your verdict should be for the defendant.
But if the goods could have been saved from ruin by the efforts
and by the care of the defendant company, they were bound
to exercise that care to save them from the flood, and if they
did not and they could have, then the plaintiff is entitled to the
damage which he has sustained. [2]

[It has been shown to you that the company, in the exercise

of prudence, raised their tracks three feet to avoid the result of floods, which they had learned from experience in the past. But yet, you have been told, too, that subsequent to that, it was their habit, notwithstanding the tracks had been raised, to remove the goods from that dangerous location in the presence of a flood or a coming flood, which was evidently the railroad company's duty in this case. If they could have saved these goods from being destroyed or from being ruined it was their duty to do it, although there was no liability on them or their part under the bill of lading in cases of flood.] [3]

[The defendant had a right to apprehend the flood, and they had a right to strengthen themselves from the best and most practical sources obtainable to instruct them as to the necessities of the occasion. It has been demonstrated to you that the best evidence is attainable from the weather bureau, as to the condition of the river which produced that flood and as to the possibility or probability of its coming up on their tracks. Is there any evidence before you that they solicited information from any source whatsoever so as to guide them in the duties that they owed to the plaintiff and to all their other shippers. If there is any such evidence, you will assimilate it, gentlemen of the jury, with the other evidence. I have no recollection of such. I have no recollection that they produce any testimony going to show that they sought from given sources what the probabilities would be with reference to this flood.] [4]

[But if the goods could have been saved from ruin by the efforts and by the care of the defendant company, they were bound to exercise that care to save them from the flood, and if they did not and they could have, then the plaintiff is entitled to the damage which he has sustained, namely, the value of the cement, which is $222 and interest, making a total sum which counsel will give you. If you find for the plaintiff, find for that sum, including the interest, not so much money and interest, but just one sum, including the interest.] [5]

Verdict and judgment for plaintiff for $236.98. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them;

(6–8) admission of evidence quoted in the opinion of the Superior Court.

*James R. Miller,* with him *Patterson, Sterrett & Acheson,* for appellant.—It is now settled by the great weight of authority as well as reason that evidence of subsequent repairs or precautions taken after the happening of the accident causing the injury is not admissible to prove antecedent negligence: Baran v. Iron Co., 202 Pa. 274.

The defendant in such a case is liable only when it has failed to use ordinary care in anticipating and guarding against the flood, or act of God, which causes the injury: Grier v. Ry. Co., 108 Mo. App. 565; Morrison v. Davis & Co., 20 Pa. 171.

*Stewart M. Cunningham,* for appellee.—The tracks were raised prior to the flood in question, and if it was necessary before the repairs were made it was proper to show in rebuttal that it was still necessary: Stewart v. Road Co., 3 Pa. Superior Ct. 86.

The evidence of the plaintiff was competent to rebut the inference that since the tracks were raised it was not necessary to remove the cars: Lederman v. Railroad Co., 165 Pa. 118.

The burden of proof was on the defendant to show why the car was not delivered. The mere fact that there was a flood was not sufficient to relieve the defendant from liability or shift the burden of proof: Menner v. D. & H. C. Co., 7 Pa. Superior Ct. 135; Penna. R. R. Co. v. Miller, 87 Pa. 395; Rhymer v. R. R. Co., 27 Pa. Superior Ct. 345.

OPINION BY ORLADY, J., July 14, 1909:

The plaintiff brought an action in assumpsit to recover from the defendant the sum of $222, with interest from April 1, 1907, this being the price paid for 600 bags of Portland cement, which were delivered in good condition to the defendant at Nazareth, Pa., for shipment to Turtle Creek, Pa. The testimony shows that the car in which the cement was carried, arrived at Turtle Creek on March 11, 1907, and was placed on a delivery siding. The next day an unexpected rise in the water

of the creek submerged the tracks of the railroad company; the rainfall continued, and the height of the flood was reached on March 15, when the water began to subside. It was admitted that the cement was a total loss, and that it had not been delivered to the plaintiff, but what disposition was made of it by the defendant company does not appear.

On the trial the defendant contended that it was relieved from liability for any loss by reason of a clause in the bill of lading, as follows: "No carrier or party in possession of all or any of the property herein described, shall be liable for any loss thereof, or damage thereto, by causes beyond its control; or by floods, or by fire," and adduced proof to show that the rise in the water over the tracks was of such an unusual and extraordinary character, as to make it an unforeseen condition and equivalent as a defense to an act of God.

The facts in regard to the flood waters are not in dispute, and the testimony admitted on the trial, of which the defendant complains, was developed in rebuttal after the defendant had proved that the tracks of this particular part of the roadbed had been raised about three feet in the January preceding, as a precautionary measure to avoid any injury similar to that in the present case. The yardmaster at Turtle Creek testified as follows: "Q. Do I understand you to say that floods in Turtle Creek are usually caused by back water? A. Usually. I have seen floods, however, that came down the valley, cloudbursts and such matter. Q. In prior floods you always took the cars out? A. Yes, sir; at this flood the tracks were so much higher I didn't think it necessary to take them out. Q. Have you taken them out since? A. No, sir."

The plaintiff stated as follows, "We offer to show that since the track was elevated in the station, that they had nevertheless been in the habit of removing the cars. This in rebuttal to defendant's testimony that they had not done so since the track was raised." To which counsel for defendant objected, because the track had been recently elevated; which objection was overruled and the witnesses permitted to testify that in prior floods it was the custom of the defendant to remove the cars to a place of safety, which custom had prevailed after the

tracks had been elevated whenever the necessity of such precaution was made manifest by the rising waters.

The weight of the authorities, as well as of reason, is that evidence of subsequent repairs or precautions taken after the happening of an accident causing the injury, is not admissible to prove antecedent negligence: 6 Thompson on Negligence, sec. 7871.

In Baran v. Reading Iron Company, 202 Pa. 274, this question is fully reviewed, and it is therein declared, that, "The admission of such testimony cannot be defended on principle. It is not more likely to show that there was negligence before the accident, than that the occurrence of the accident first suggested the use of methods or appliances not before thought of; it applies to conduct before an accident, a standard of duty determined by after-acquired knowledge; it punishes a prudent and well meaning defendant who guards against the recurrence of an accident he had no reason to anticipate, or who out of a considerate regard for the safety of others exercises a higher degree of care than the law requires." The testimony to which objection is made was not offered to show the subsequent repairs or precautions taken after the happening of the accident, but to show that the defendant company did, after making the change in the tracks, remove to a place of safety, the cars that were in danger from flood waters after the tracks had been elevated. This change in the track construction was completed in January, as stated by a witness, in order "to keep the cars up out of the water, and we haven't taken them out since." The testimony was properly received in contradiction of defendant's witnesses, as their testimony was very important.

The first, second and third assignments of error affect the degree of care required in such a case. The court charged the jury that "the plaintiff has taken voluntarily the burden to show negligence on the part of the defendant company, and is attempting to prove to you that although the defendant company would be relieved in the case of a flood, yet that does not relieve them from the duty of saving the goods from a flood if they possibly can, and as a matter of law, I say to you that if the defendant had notice from the elemental conditions

surrounding it, from the rising of the river, the falling of the rain, and from the experience of its agents, if they had any, according to the evidence, they had the right to use it, and every precaution that was absolutely necessary to save these goods from the flood, if it could be done . . . . if they did all under the exigencies of the occasion that they possibly could do, to save these goods from the flood, they are not liable, but if the goods could have been saved from ruin by the efforts, and by the care of the defendant company, they are bound to exercise that care to save them from the flood. If they did not, and could have; then the plaintiff is entitled to recover damages which he has sustained." Similar expressions are used several times in the charge.

The rule of duty is fairly stated in 1 Hutchinson on Carriers (3d ed.), 320: "If it appear that the agents of the road had used such diligence as prudent and skilled men engaged in that kind of business might be expected to use under like circumstances, to protect and secure the property confided to their care, the carrier ought to be excused." And on page 307, "In general it may be stated that where the carrier by the exercise of reasonable diligence could have foreseen the happening of the event that caused the injury to the goods, and he failed to make use of the means at his command to guard against it, and the goods are thereby lost or injured, he will be liable, although such loss or injury would not have been but for the act of God." Morrison v. Davis & Co., 20 Pa. 171; Roach v. Kelly, 194 Pa. 24; Stephenson v. Railroad Co., 20 Pa. Superior Ct. 157. In Shaughnessy v. Pittsburg, 20 Pa. Superior Ct. 609, this court by RICE, P. J., states, "In an action for negligence where the defendant alleges an extraordinary flood as the cause of the loss and gives evidence to that effect, and witnesses for the plaintiff testify that many times before the stream had been higher than it was at the time of the accident, the question whether the flood is an extraordinary one or not, is for the jury.'"

The plaintiff bases his right to recover not so much on the ground that there was not an extraordinary flood, as on the lack of ordinary care in permitting the car, which was loaded

with his cement, to remain in a place of danger at least forty-eight hours after the waters had begun to rise, and, in not dealing with this cement as with other perishable goods, even after the tracks had been raised. The degree of care exacted by the court was greater than that required by the law, and for this reason, the judgment must be reversed.

The fourth assignment of error, relating to the character of the notice obtainable from the weather bureau as to the conditions producing the flood, and as to the possibility or probability of the waters coming upon the tracks, is not material in light of the testimony, as it is shown that the weather bureau was entirely wrong in its prognostication in regard to this flood, and that its error was in the defendant company's favor. This bureau is not of such reputed accuracy as to make its reports the sole basis of the right to recover. Like all statistical information which is founded on natural conditions and varying causes, it may be considered as evidence, but it is not conclusive.

The first, second and third assignments of error are sustained for the reasons above given. The judgment is reversed with a venire facias de novo awarded.